MICHIGAN TAXPAYERS UNITED, INC v GOVERNOR

Docket No. 208299. Submitted June 10, 1999, at Lansing. Decided June 25, 1999, at 9:20 A.M.

Michigan Taxpayers United, Inc., and others brought an action in the Ingham Circuit Court against the Governor and the Department of Treasury, seeking to enjoin the defendants from collecting a gasoline tax increase imposed by 1997 PA 83. The court, Lawrence M. Glazer, J., denied the plaintiffs' request for an immediate injunction and dismissed the portion of the suit alleging that the Legislature acted improperly in giving the act immediate effect. The parties voluntarily dismissed the balance of the claims and the plaintiffs reserved the right to appeal the denial of injunctive relief. The plaintiffs appealed, alleging that the act could not be given immediate effect because the bill was originally passed by the House, which voted to give the bill immediate effect, the Senate then approved an amended substitute bill and voted to give it immediate effect, the bill was returned to the House, and the House concurred in the Senate amendments but did not vote again whether to give the bill immediate effect. The Governor signed the bill, which was assigned public act number 1997 PA 83, and the act was given immediate effect.

The Court of Appeals *held*:

1. The Legislature acted properly in giving 1997 PA 83 immediate effect.

2. A majority vote of the House was not required when, in 1997, the Democratic leadership changed the informal House practice or procedure regarding immediate effect from one that would have required a new House vote regarding immediate effect in the present situation to one that didn't require a new vote. The plaintiffs failed to show that the previous policy or procedure was a House Rule subject to the requirement of House Rule 75 that a majority of the House members must approve any change to a House Rule.

3. The policy change in 1997 brought the House into compliance with its own rules and complies with case law. The House's concurrence in the action of the Senate with respect to the Senate amendments of the House bill must be considered as a concurrence in the order that such amendments take immediate effect.

4. The parol evidence from the Clerk of the House offered by the plaintiffs to support their claim that the Speaker of the House ignored twenty-five house members' demand for a vote on immediate effect in violation of House Rule 12 and Const 1963, art 4, § 18 cannot be used to show that the Legislature violated the constitution in enacting the statute. The Journal of the House makes no reference to the alleged demand for a vote. The Journals of the House and Senate are conclusive evidence of those bodies' proceedings, and when no evidence to the contrary appears in the journals, the Court of Appeals will presume the propriety of those proceedings. The Clerk of the House has no actual or implied authority to unilaterally supplement the journal.

5. The constitution does not require the House to vote on a matter upon demand. It merely requires that when a vote is taken, the members may demand a record roll call of that vote.

Affirmed.

1. STATUTES — IMMEDIATE EFFECT.

A bill originally passed by the House with a vote that it should take immediate effect is properly given immediate effect after the bill is amended by the Senate with a vote that it should be given immediate effect and the bill is returned to the House, which concurs in the Senate's amendments but does not vote again with regard to whether the bill should be given immediate effect; the House's concurrence in the action of the Senate with respect to the Senate's amendments is properly considered as a concurrence in the order that such amendments take immediate effect.

2. EVIDENCE — LEGISLATIVE JOURNALS.

The Journals of the House and Senate are conclusive evidence of those bodies' proceedings; the Court of Appeals presumes the propriety of those proceedings where no evidence to the contrary appears in the journals.

3. EVIDENCE — LEGISLATIVE JOURNALS.

The constitutionally imposed responsibility for keeping the Journals of the House and Senate lies with the House and the Senate, not with the officers charged with the clerical duties associated with keeping the journals; the Clerk of the House has no actual or implied authority to unilaterally supplement the Journal of the House.

Constitutional Litigation Associates, P.C. (by *Hugh M. Davis, Jr.*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Katharyn A. Barron,* Assistant Attorney General, for the defendants.

Before: NEFF, P.J., and HOOD and MURPHY, JJ.

MURPHY, J. Plaintiffs filed suit to enjoin defendants from collecting the four cents a gallon gasoline tax increase imposed by 1997 PA 83.[1] The lower court denied plaintiffs' request for an immediate injunction and dismissed that portion of plaintiffs' suit claiming that the Legislature failed to properly give immediate effect to 1997 PA 83. The parties voluntarily dismissed the balance of plaintiffs' claims, reserving plaintiffs' right to appeal the lower court's denial of injunctive relief. The sole issue on appeal is whether the lower court erred in concluding that the Legisla-

---

[1] The relevant portion of 1997 PA 83 has been codified at MCL 207.102; MSA 7.292, and provides as follows:

(1) A specific tax at a rate of cents per gallon determined under subsection (2) is imposed on all gasoline and diesel motor fuel sold or used in producing or generating power for propelling motor vehicles used upon the public roads and highways in this state. The tax shall be paid at those times, in the manner, and by those persons specified in this act. It is the intent of this act to impose a tax upon the owners and drivers of motor vehicles using an internal combustion type of engine upon the public roads and highways of this state by requiring them to pay for the privilege of using the public roads and highways of this state, in addition to the motor vehicle license tax.

(2) The tax rate imposed under subsection (1) is as follows:

(a) For the tax imposed on gasoline and diesel motor fuel before August 1, 1997, 15 cents.

(b) For the tax imposed on gasoline after July 31, 1997, 19 cents.

(c) For the tax imposed on diesel motor fuel after July 31, 1997, 15 cents.

(3) The state commissioner of revenue shall notify each supplier, wholesale distributor, and each retail dealer of gasoline in this state of the tax rate imposed under subsection (1) immediately after the tax rate is determined.

ture properly gave immediate effect to 1997 PA 83. We conclude that the Legislature acted properly and therefore affirm the decision of the lower court.

On June 4, 1997, HB 4872 was introduced in the Michigan House of Representatives, proposing to increase the Michigan gas tax. The House passed the bill on June 26, 1997, with the requisite two-thirds of the House voting to give the bill immediate effect.[2] The bill then proceeded to the Senate, where the Senate passed the bill with various amendments and returned it to the House. On July 3, 1997, however, the Senate requested the return of the bill, whereupon the Senate approved a motion for reconsideration and ultimately approved Senate substitute, S-8, which provided for an increase of the Michigan gasoline tax from fifteen cents a gallon to nineteen cents a gallon. At that time, the Senate also voted to give HB 4872, as amended by S-8, immediate effect. The Senate then returned the bill to the House, where the House concurred in the Senate amendments. The House did not vote, however, whether to give the bill, as amended, immediate effect. On July 25, 1997, the Governor signed HB 4872 (S-8), which was assigned public act number 1997 PA 83. The public act was given immediate effect.

Plaintiffs argue that following the Senate's amendment of HB 4872, the House was again required to cast an immediate-effect vote before the bill, as amended, could have immediate effect. Whether the

---

[2] Const 1963, art 4, § 27 provides:

No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.

Legislature properly gave immediate effect to the bill is a question of law that we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

The record in this case reveals that from approximately 1968 to 1996, the House had an informal policy that the immediate effect given to a bill, which was subsequently amended by the Senate, would lapse unless expressly renewed by the House upon the return of the amended bill from the Senate. According to an affidavit of Mary Kay Scullion, the Clerk of the House, that policy was changed in January 1997 pursuant to a decision of the Democratic leadership. The new policy provided that immediate effect would continue to attach to a bill, which was amended in the Senate and returned to the House for approval of the Senate amendments, unless the Majority Floor Leader moved in the House to give the bill immediate effect and the motion was defeated.

Plaintiffs first argue that the Democratic leadership lacked the authority to change the policy regarding immediate effect, which had been in existence before January 1997. Plaintiffs maintain that House Rule 75 required a majority vote of the members of the House to change any rule of the House. Although House Rule 75 provides, in relevant part, that "[a]ny rule of the House may be amended by a majority vote of the Members elected and serving," plaintiffs have presented no evidence that the previous policy of requiring a second immediate-effect vote was a House Rule subject to the procedural requirements of House Rule 75. In fact, on this record, the House policy in existence before January 1997 appears to have been merely an informal practice or procedure. Accord-

ingly, plaintiffs' contention that a majority vote of the House was required to change the informal policy of requiring a second immediate-effect vote after a senate amendment is without merit.

Further, the procedure used by the House before the January 1997 change in policy was contrary to both the House Rules and case law. Specifically, House Rule 76 requires the House to defer to Mason's Manual of Legislative Procedure in matters not addressed by the Michigan Constitution, the House Standing Rules, or the Joint Rules of the Senate and the House of Representatives. Relevant to this case, Mason's Manual of Legislative Procedure (1989), subsection 730(3), p 502,  provides as follows:

> When, on the original passage of a bill, one house voted that the bill should take effect immediately and the other house, after amending the bill, passed it by a like vote, the bill took effect immediately although the first house, when it concurred in the amendments, did not vote again to make the bill effective immediately.

Accordingly, the 1997 change in policy merely brought the House into compliance with its own rules. In addition, the policy change also complies with case law.

In *People ex rel Attorney General v Burch*, 84 Mich 408; 47 NW 765 (1891),  our Supreme Court examined a situation similar to that presented in this case. In *Burch*, a bill providing for the creation of an additional circuit court judge in Kent County was introduced and passed in the Senate. The Senate also ordered that the bill would take immediate effect. The bill then went to the House, where the House passed the bill with certain amendments and gave the

amended bill immediate effect. On the bill's return to the Senate, the Senate concurred in the House amendments; however, the House then requested return of the bill, where it was further amended. On the bill's return to the Senate, the Senate again concurred in the House amendments, whereupon the bill was signed by the proper officers of both houses and approved by the Governor. The question before our Supreme Court was whether the Legislature properly gave the bill immediate effect, because the Senate did not vote again regarding immediate effect after either of the House amendments of the bill. Our Supreme Court held that the bill was properly given immediate effect.

> It is shown by the journal that the Senate when concurring in the House amendments made no separate order that the bill as amended should take immediate effect. This was not necessary. When the bill was originally passed by the Senate, it was ordered to take immediate effect. The bill as amended by the House was by that body ordered also to take immediate effect. This being originally a Senate bill, it was not necessary, after it had once been given immediate effect, and the action of the Senate thereafter was confined to concurrence in the House amendments which had by that branch of the Legislature been ordered to take immediate effect, for the Senate again to order by a separate vote that the bill as amended should take immediate effect. Concurrence in the action of the House as to the amendments must be considered as a concurrence in the order that such amendments take immediate effect. [*Id.* at 413-414.]

Therefore, pursuant to our Supreme Court's decision in *Burch*, we conclude that 1997 PA 83 was properly given immediate effect. The House's "[c]oncurrence in the action of the" Senate with respect to the Senate amendments of HB 4872, "must be considered as a

concurrence in the order that such amendments take immediate effect." *Id.* at 414.

Plaintiffs finally contend that the Speaker of the House allegedly ignored twenty-five House members' demand for a roll-call vote with regard to the issue of immediate effect and that the Speaker's actions were a violation of House Rule 12 and Const 1963, art 4, § 18.[3] Although plaintiffs have provided documentation to support their claim, namely, an affidavit from the Clerk of the House, the Journal of the House makes no reference to the alleged demand for a vote. Parol evidence may not be used to show that the Legislature violated the constitution in enacting a statute. *People ex rel Hart v McElroy,* 72 Mich 446, 451-452; 40 NW 750 (1888). Rather, the Journals of the House and Senate are conclusive evidence of those bodies' proceedings, and when no evidence to the contrary appears in the journal, we will presume the propriety of those proceedings. *Attorney General v Rice,* 64 Mich 385, 391; 31 NW 203 (1887).

---

[3] House Rule 12 provides in relevant part:

[A] roll call of the House may be demanded by one-fifth of the Members present (see Const 1963, Art 4, § 18) on any pending question and in such case the record of the votes and names of the voting Members shall be entered in the journal.

Const 1963, art 4, § 18 provides:

Each house shall keep a journal of its proceedings, and publish the same unless the public security otherwise requires. The record of the vote and name of the members of either house voting on any question shall be entered in the journal at the request of one-fifth of the members present. Any member of either house may dissent from and protest against any act, proceeding or resolution which he deems injurious to any person or the public, and have the reason for his dissent entered in the journal.

Plaintiffs, however, urge that this case should be distinguished from *McElroy* and *Rice* because the parol evidence here is from the Clerk of the House, the person charged with keeping the Journal of the House. This argument is without merit. Our Supreme Court has held that the constitutionally imposed responsibility for keeping the required journals lies with the House and with the Senate, not with the officers charged with the clerical duties associated with keeping the journals. *Turnbull v Giddings*, 95 Mich 314, 316-317; 54 NW 887 (1893). Thus, the Clerk of the House has no actual or implied authority to unilaterally supplement the Journal of the House, and plaintiffs have cited no additional authority supporting their contention that this Court should disregard well-settled law and consider parol evidence to determine whether the Legislature acted properly. Further, even if the Journal of the House made reference to the alleged demand, the constitution does not require the House to vote on a matter upon demand; it merely requires that when a vote is taken, the members may demand a record roll call of that vote. Const 1963, art 4, § 18.

In sum, because the Legislature did not act improperly in giving 1997 PA 83 immediate effect, the trial court did not err in denying plaintiffs' request for injunctive relief.

Affirmed.